UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DWAYNE BUCKERY,<br><br>               Petitioner,<br><br>vs.<br><br>JAMES CONWAY,[1] Superintendent, Attica Correctional Facility,<br><br>               Respondent. | No. 9:06-cv-01546-JKS<br><br>MEMORANDUM DECISION |

      Petitioner Dwayne Buckery, a state prisoner appearing *pro se*, has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Buckery is currently in the custody of the New York Department of Correctional Services, incarcerated in the Attica Correctional Facility. Respondent has answered the petition and Buckery filed his traverse.

I.  BACKGROUND/PRIOR PROCEEDINGS

      Buckery was convicted by a jury in the Warren County Court of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree. Buckery was sentenced as a persistent felony offender to an indefinite term of 20 years to life. Buckery timely appealed his conviction to the Appellate Division, Third Department, which affirmed his conviction July 28, 2005, and the New York Court of Appeals denied leave to appeal on September 26, 2005. *People v. Buckery*, 798 N.Y.S.2d 788 (N.Y. App. Div.), *lv. denied*, 837 N.E.2d 740 (N.Y. 2005). His conviction became final 90 days later, December 27, 2005,[2] when his time to seek certiorari from the United States Supreme Court lapsed.

---

    [1] James Conway, Superintendent, Attica Correctional Facility, is substituted for Thomas A. Poole, Superintendent, Five Points Correctional Facility. Fed. R. Civ. P. 17(d).

    [2] Monday, December 26, 2005, was a holiday.

On September 18, 2006, Buckery filed a motion for a writ of error *coram nobis* in the Appellate Division, Third Department. The Appellate Division summarily denied the motion without reasoned opinion and the New York Court of Appeals denied leave to appeal on May 31, 2007. *People v. Buckery*, 869 N.E.2d 662 (N.Y. 2007).

Buckery timely filed his petition for relief in this Court on December 26, 2006, and his amended petition with leave of court on August 3, 2007.

## II.  ISSUES RAISED/DEFENSES

In his amended petition, Buckery raises four issues: (1) he received ineffective assistance of counsel at the pre-trial stages; (2) he was denied due process and a fair trial due to the court's supplemental jury instructions and the introduction of uncharged crimes; (3) his persistent felony offender status is unconstitutional; and (4) he received ineffective assistance of appellate counsel.

Respondent contends that Buckery's second and third grounds are unexhausted. Respondent raises no other affirmative defenses.

## II.  STANDARD OF REVIEW

Because Buckery filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Consequently, this Court cannot grant relief unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[3] The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision.[4]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that

---

[3] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

[4] *Williams v. Taylor*, 529 U.S. at 412.

the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[5]  When a claim falls under the "unreasonable application" prong, a state court's application of the Supreme Court precedent must be "objectively unreasonable," "not just incorrect."[6]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[7]  Finally, in a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[8]

In applying this standard, this Court reviews the last reasoned decision by the state court.[9]  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[10]  If a federal claim has not been adjudicated on the merits, AEDPA deference is not required.[11]  In that situation, conclusions of law and mixed questions of fact and conclusions of law are reviewed *de novo*.[12]  A state court decision is conclusively presumed to have been on the merits when the state court disposes of the claim on other than procedural grounds, even where it fails to provide any reasoning for the disposition.[13]  Where there is no reasoned decision of the state court addressing the ground or

---

[5] *Carey v. Musladin*, 549 U.S. 70, 77 (alterations by the Court); *see Wright v. Van Patten*, 128 S. Ct. 743, 746-47 (2008) (per curiam).

[6] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003).

[7] *Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933, 1939 (2007).

[8] *Fry v. Pliler*, 551 U.S. 112, 127 S. Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[9] *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[10] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[11] *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003).

[12] *DeBerry v. Portuondo*, 403 F.3d 57, 67 (2d Cir. 2005).

[13] *See Jimenez v. Walker*, 458 F.3d 130, 145–46 (2d Cir. 2006), *cert. denied*, 127 S. Ct. 976 (2007) (Mem).

grounds raised by Buckery on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it.[14]

## IV. DISCUSSION

Ground 1. Ineffective Assistance of Counsel (Pre-Trial).

Buckery asserts several instances in that he describes as constituting ineffective assistance of counsel during the pretrial period: (1) failure to obtain immediate release on his own recognizance for the failure to hold a preliminary hearing within the time prescribed by N.Y. Criminal Procedure Law § 180.80; (2) failure to preserve his rights to testify at the grand jury proceedings; (3) failure to seek preclusion of People's evidence based on the failure of the prosecution to timely respond to an Omnibus motion; and (4) failure at a *Huntley* hearing to adequately cross-examine the officer who took Buckery's statement, conceding Buckery's rights were not violated, and withdrawing the request for a *Huntley* hearing.[15]

Buckery raised these issues on direct appeal. The Appellate Division did not specifically address the ineffective counsel issue, but denied it in the catch-all at the end of its decision: "Defendant's remaining contentions have been reviewed and rejected."[16]

Under the standard in *Strickland v. Washington*, to demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[17] A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[18] Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable

---

[14] *See Spears v. Greiner*, 459 F.3d 200, 203-04 (2d Cir. 2006).

[15] Hearing held on a motion to suppress statements made to police officers. *See People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965).

[16] 798 N.Y.S.2d at 791. There being no reasoned state court decision addressing this issue, this Court must determine it *de novo* on the record before it. *See Spears*, 459 F.3d at 203–04.

[17] 466 U.S. 668, 687 (1984).

[18] *Id.*

probability that, but for counsel's ineffectiveness, the result would have been different.[19] *Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions. Indeed, the Supreme Court admonished in *Strickland*:[20]

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

A.  *Failure to Obtain Release*.

The record reflects the following occurred.[21] (1) Buckery was arrested on August 6 or 7, 2003. (2) On August 8 Buckery, appearing *pro se*, requested a preliminary hearing. (2) On August 17 counsel first visited Buckery. (3) On August 18 counsel also requested a preliminary hearing. (4) A preliminary hearing was scheduled for 11:00 a.m., August 22. (5) The grand jury returned an indictment at approximately 10:55 a.m., August 22. It is uncontested that Buckery was incarcerated during the entire period between his arrest and the date the grand jury returned the indictment, and that time exceeded the time permitted under N.Y. Criminal Procedure Law § 180.80.

Counsel then filed an application for a writ of habeas corpus in the Warren County Court. In the habeas petition, counsel argued that because of the violation of § 180.80 Buckery was entitled to immediate dismissal of the charges and release from confinement. The County Court

---

[19] *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

[20] 466 U.S. at 689 (internal citations and quotation marks omitted).

[21] Transcript of habeas corpus hearing held September 5, 2003. Dkt No. 18-12, pp. 1 – 39.

denied the writ and set bail.  In doing so, the County Court opined that had Buckery sought relief before the indictment was returned he would have been entitled to release on his own recognizance under § 180.80 pending indictment by the grand jury; however, since the proceeding was post-indictment, he was not entitled to dismissal and release.

Other than to have moved quicker, Buckery does not specify what more counsel could have done under the circumstances to preserve his rights.  Even assuming that counsel's performance was deficient does not entitle Buckery to relief.  The relief Buckery might be entitled to is beyond the power of this Court to grant.  Buckery was entitled to release on his own recognizance during the period between when the preliminary hearing should have been held and his indictment by the grand jury.  Because he is now confined by reason a judgment of conviction, he is not presently being held unlawfully as a result of the failure of counsel to obtain his release prior to the indictment.  That has effectively rendered this point moot.  Nor, for that matter, has Buckery made any showing that the ultimate outcome, his conviction, would have been different had he been released.

B. *Failure to Preserve Right to Testify Before Grand Jury*.

Buckery contends that despite the fact that he conveyed to counsel his desire to testify before the grand jury, counsel failed to transmit that request to the prosecutor.  As a consequence, Buckery was denied the right to testify as provided in New York law.  Analysis starts with the basic proposition that the Fifth Amendment right to a grand jury indictment has not been incorporated against the states through the Fourteenth Amendment.[22]  Consequently, an infirmity in state grand jury procedures in criminal prosecutions does not, itself, raise any Constitutional issue.  Any infirmity in state criminal grand jury proceedings, standing alone without some other Constitutional infirmity, is a product of state law, which, as noted above, is beyond the purview of this Court in a federal habeas proceeding.[23]

---

[22] *Branzburg v. Hayes*, 408 U.S. 665, 688 n.25 (1972) (citing *Hurtado v. California*, 110 U.S. 516 (1884)).

[23] *See Beck v. Washington*, 369 U.S. 541, 545–46 (1962) (discussing state criminal charging procedures).

Buckery's argument is, as Respondent notes, conclusory in nature and unduly vague. What Buckery has failed to establish is that he was prejudiced in any way by the failure of counsel to preserve his right to testify before the grand jury. Notwithstanding that Buckery testified at his trial, the petit jury convicted him of the crimes for which he was indicted. It strains credulity beyond the breaking point to infer that a grand jury hearing Buckery's testimony would not have indicted him using a "probable cause to believe" standard and yet a petit jury hearing the same testimony convict him applying the higher "beyond a reasonable doubt" standard. Where claims concerning state grand jury proceedings are rendered harmless by the decision of a petit jury, they are foreclosed in a collateral attack brought in a federal court.[24] Buckery has not shown, indeed cannot show, that the outcome of the grand jury proceedings would have been different had he testified before the grand jury.[25]

    C. *Prosecution's Untimely Response.*

Buckery contends that counsel's performance was deficient because he did not seek sanctions for the prosecution's untimely response to a pre-trial Omnibus motion. First, the Court notes that nowhere in the record cited by Buckery does it indicate the date that the response to the Omnibus motion was due. The transcript of the hearing held on November 5, 2003, appears to indicate that it was due that day. At the hearing the County Court was advised that the response would be made later that day. The County Court, *sua sponte*, gave the People one week, until November 12, to get their response filed with the Court. Assuming that the prosecution was late in responding, it appears crystal clear from the action of the County Court extending the time to respond that any motion to impose sanctions would have been an exercise in futility. In any event, there is no reasonable likelihood that the County Court would have imposed sanctions that might have assisted Buckery's defense, *i.e.*, some form of a preclusion order.

---

[24] *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989).

[25] To the extent that Buckery claims prejudice from the failure to obtain a preliminary hearing, under New York law, Buckery was entitled to a preliminary hearing only if he was not indicted by a grand jury. The indictment by the grand jury prior to the time the preliminary hearing was scheduled rendered Buckery's right to a preliminary hearing moot.

D. *Huntley Hearing*.

Buckery contends that counsel was ineffective in failing to cross-examine one of the officers about a conflicting date as to when Buckery made the statement sought to be suppressed and withdrew the request for a *Huntley* hearing, conceding that Buckery's rights were not violated. The transcript of the *Huntley* hearing does not support Buckery's interpretation of the events.

The written notice prepared by the officer listed the date of Buckery's's statement as July 29, 2003, when, in fact, the statement was made on August 6, 2003, as was testified to by the officer. This was an apparent typographical error easily explained, and failing to raise this issue would more likely than not have been fruitless. It is true that while Buckery was being cross-examined by the prosecutor counsel *attempted* to concede that Buckery's rights had not been violated and *attempted* to withdraw the *Huntley* motion. The County Court did not accept either the concession and, at least inferentially, denied counsel's request to withdraw the *Huntley* motion. The County Court allowed the prosecutor to complete cross-examination of Buckery. At the conclusion of Buckery's cross-examination, the County Court, after rendering findings of fact and conclusions of law based upon the evidence presented, denied the *Huntley* motion on the merits. At no point in these proceedings has Buckery contended that the *Huntley* ruling was erroneous.

Buckery has failed to establish that had counsel acted otherwise the result would have been different.

This Court cannot say that determination of the Appellate Division that Buckery's ineffective counsel claim lacked merit was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.

Petitioner has failed to establish that counsel committed any error, or combination of errors, that was so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that defendant's defense was prejudiced, as required by *Strickland-Hill*. In particular, Petitioner has failed to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

Buckery is not entitled to relief on his first ground.

Ground 2:  Due Process Violation (Supplemental Instruction/Uncharged Crimes).

    A.  *Supplemental Instruction*.

After summations, the trial court charged the jury. During deliberations, the jury requested the written definition of "to sell." When the court summoned the jury in to supply that definition, a juror provided an additional note requesting to view the bag of drugs. While viewing the drugs, one juror verbalized, "This is a powder substance. What is the difference in the powder and the crack and how do they mix the one from the other?  I am just curious." Another juror asked, "Was it established there was crack?" The County Court advised the jurors to "take a look at the bag of drugs" and then provide the court with a written list of questions. The foreman later returned with one question: "Why is Exhibit #14, page #3, Item #1 different than the evidence bag #9? Ie. Item #1 powder substance (1) baggie with 11 smaller bags of substance (powder only) vs. Exhibit #9, states crack cocaine and cocaine (chunks and powder)." Over the objection of defense counsel, County Court gave the following supplemental instruction:

> Welcome back. I am sorry it's taken a while. It's taken a while to answer your question or to determine the correct answer to the question. The question I received has to do with the difference-- I am going to summarize from your question that there is a powder substance with one baggie with 11 smaller bags of substance powder only. That is item number 13 and in exhibit number 9 it states crack cocaine and cocaine chunk and powder. Again, it is not the job of the judge to determine the facts. That is your job and your job alone. I won't presume to do that. That is something you have to do. However, it is my job to tell you about the law. And what I have to say about the law may solve that problem. It sounds like there may be some confusion. Perhaps some confusion I caused when I didn't explain the charges against Mr. Buckery well enough. He is charged with two counts. One of those counts is called Criminal Possession of a Controlled Substance in the Third Degree, which states that a person is guilty of Criminal

>Possession of a Controlled Substance in the Third Degree when he knowingly and unlawfully possesses a narcotic drug with intent to sell it. Now, the law defines narcotic drug as being a lot of different things but both cocaine and crack cocaine are narcotic drugs. He is not charged with having either cocaine or crack cocaine. The law says it is illegal to knowingly and unlawfully possess a narcotic drug with intent to sell it. That is the first count. The second count alleges that the defendant violated Criminal Possession of a Controlled Substance in the Fourth Degree and that states a person is guilty of Criminal Possession of a Controlled Substance in the Fourth Degree when he knowingly and unlawfully possessed one or more preparations, compounds, mixtures or substances containing a narcotic drug. Again, it doesn't say cocaine. It doesn't say crack cocaine. It says narcotic drug. It says preparations, compounds, mixtures or substances of an aggregate weight of 1/8 ounce or more. So I am instructing you that the law is that both cocaine and crack cocaine are narcotic drugs and that term is an element of each count. All right. I am not sure if that necessarily answers everyone's question at this point. I will let you go back and deliberate. If it was really some different question or a question about the facts-- if it is a question question, that is something you should be talking about. If it is a law question then I think I answered the question that cocaine and powder cocaine and crack cocaine-- it doesn't matter. They're both illegal. They're both narcotic drugs. All right. Good. Thank you.

>(At this time, the jury exited the courtroom.)

Buckery argues that in giving the supplemental instruction the County Court improperly invaded the jury's province to decide the facts. More specifically that the questions propounded by the jury indicated that the discrepancies in the description of the drugs between those found at the crime scene and those tested by the laboratory raised doubts in the minds of the jurors concerning the veracity of the drug evidence attributed to Buckery. Buckery surmises that the challenged instruction improperly implied that the jury should not consider or otherwise assess credibility based upon the noted material differences in the form of the cocaine, powder or crack, found at the scene and tested by the laboratory. Buckery argues that this usurped the fact finding role of the jury in assessing credibility and the weight to be given the drug evidence introduced by the People. In rejecting Buckery's arguments the Appellate Division held:[26]

>We are unpersuaded by defendant's claim that the People failed to adequately establish a chain of custody with respect to the drugs thrown outside the window

---

[26] 798 N.Y.S.2d at 789–90.

*Buckery v. Conway*, 9:06-cv-01546-JKS                    10

of the house that day. Defendant argues that the physical description of the drugs recovered at the scene and placed in an evidence bag did not match the physical description of the drugs actually tested since "[t]he actual evidence seized at the scene contained pieces of crack cocaine [whereas] the State lab received only powder." Such discrepancy gives rise to defendant's supposition that "[e]ither the wrong evidence was sent to the police lab or it was tampered with prior to the State lab receiving same."

Defendant's claims are unpersuasive in light of the testimony of the laboratory analyst who tested the drugs. According to this witness, she compared the description of the evidence with a description on the written request for analysis form. Moreover, she then described the drugs as "powder" on the laboratory report, as is her usual practice, instead of describing it is (*sic*) as "chunky or colored," as the investigating officer had done when he collected and sealed it. [FN1] These circumstances provide a reasonable assurance of the identity and unchanged condition of the subject drugs (citation omitted). Moreover, any doubt as to the chain of custody based on the discrepancies in these descriptions went to the weight of this evidence and not its admissibility (citations omitted). In sum, we reject defendant's claim that the evidence bag containing the subject drugs was improperly admitted into evidence at trial.

---

FN1. Specifically, when asked if there was "a difference between powder cocaine and crack cocaine, or hydrochloride cocaine," the drug analyst responded, "I used the word powder rather than chunky or colored. *I just call everything powder*" (emphasis added).

---

We also find no error in County Court's supplemental instruction to the jury during its deliberations. A note received by the court revealed that the jury was seeking guidance on the alleged discrepancy between the descriptions of evidence in the evidence bag and the laboratory report. County Court responded to this inquiry by instructing the jurors that both cocaine and crack cocaine are narcotic drugs (citation omitted) and rereading the elements of the charged crimes. Since a trial court is vested with discretion in framing a response to a deliberating jury's inquiry and must respond to an inquiry in a meaningful fashion (citations omitted), we are satisfied that the court appropriately interpreted the inquiry posed in this case (citation omitted) and then meaningfully responded to it (citations omitted).

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."[27] The question is whether the instruction,

---

[27] *Boyde v. California,* 494 U.S. 370, 380 (1990).

when read in the context of the jury charges as a whole, are sufficiently erroneous to violate the Fourteenth Amendment.[28] This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions.[29] "Similarly, a jury is presumed to understand a judge's answer to its question."[30]

It is well established that not only must the challenged instruction be erroneous it must violate some constitutional right and may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.[31] This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn.[32] "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation."[33]

First, the Court notes that at no point, either before the Appellate Division or this Court, has Buckery challenged the correctness of the instruction given as far as accurately stating the law, *i.e.*, that the crimes involved controlled substances and that both powder and crack cocaine were controlled substances.

In its charge to the jury before the jury retired for deliberations, the County Court carefully explained that it was the duty of each juror to consider and weigh all the evidence in the case and decide that which was credible and worthy of consideration, that it was to accept such testimony as it believed to be truthful and reject such testimony believed to be false. Jurors were

---

[28] *Francis v. Franklin*, 471 U.S. 307, 309 (1985).

[29] *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *Francis v. Franklin*, 471 U.S. at 324 n. 9 (1985).

[30] *Weeks*, 528 U.S. at 234.

[31] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *see also Cupp v. Naughten,* 414 U.S. 141, 146-47 (1973) (same).

[32] *Estelle*, 502 U.S. at 72–73.

[33] *Id*.

specifically told that they had to determine the issue of credibility as to each witness and the weight to be given the testimony, and that they were to give no greater or lesser consideration to the testimony of the police and police forensic scientist than any other witness.

The jury was also charged with the elements of the crimes and that each element must be proved by the People beyond a reasonable doubt. In the pre-deliberation charge the County Court referred solely to crack cocaine as the narcotic involved. In its supplemental instruction the County Court correctly instructed the jury that both powder and crack cocaine were controlled substances within the scope of the crimes with which Buckery was charged. Nothing in that supplemental instruction can be construed as invading the province of the jury with respect to determining credibility and weight. Indeed, in the supplemental instruction the County Court reiterated that fact finding was exclusively the function of the jury, not the judge. The Supreme Court recently reaffirmed the principle that where a trial judge responds to a jury's question by reference to an instruction and the jury asks no followup question, it is presumed that the jury fully understood the judge's answer and appropriately applied the jury instructions.[34]

This Court cannot say that the decision of the Appellate Division *vis-a-vis* the supplemental instruction was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[35] Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.

/
 /
  /
   /

---

[34] *Waddington v. Sarausad*, 2009 WL 129033 (Slip Op. *10) (January 21, 2009).

[35] 28 U.S.C. § 2254(d).

B. *Uncharged Crimes*.

Buckery argues that the evidence of the uncharged acts had no probative value and its obvious prejudicial impact greatly outweighed its intended purpose of proving his intent to sell. In rejecting Buckery's arguments, the Appellate Division held:[36]

> Nor do we find any error in County Court's *Molineux* ruling, which permitted the People to introduce evidence of prior, uncharged drug sales by defendant. Given the number of people inside the house at the time of the raid and defendant's claim that he was only present in that house as a recreational drug user, evidence of his prior drug sales was probative of his intent to commit the charged crimes (citations omitted). Moreover, County Court gave sufficient cautionary instructions on the limited purpose for which this evidence was to be considered (citation omitted).

It is well established in this circuit that under Federal Rules of Evidence 404(b), evidence of uncharged crimes is permissible to establish intent.[37] Specifically, testimony of prior drug sales may be used to establish "knowledge" and "intent" where the defendant raises a "mere presence" defense.[38] Admission of evidence under Rule 404(b) is reviewed for an abuse of discretion.[39]

As the Appellate Division applied the same rule as is applied in federal courts with respect to the admissibility of uncharged crimes, this Court cannot say that the decision of the Appellate Division was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[40] Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams–Schriro*; *i.e.*,

---

[36] 798 N.Y.S.2d at 790.

[37] *United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007).

[38] *See, e.g., United States v. Bruno*, 873 F.2d 555, 561–62 (2d Cir. 1989); *United States v. Fernandez*, 829 F.2d 363, 367 (2d Cir. 1987) (per curiam); *United States v. Tussa*, 816 F.2d 58, 68 (2d Cir. 1987); *United States v. Martino*, 759 F.2d 998, 1004–05 (2d Cir. 1985).

[39] *United States v. Lombardozzi*, 491 F.3d 61, 78–79 (2d Cir. 2007).

[40] 28 U.S.C. § 2254(d).

the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.

Buckery is not entitled to relief on his second ground.

Ground 3:  Persistent Offender Status.

Prior to trial Buckery was offered a plea bargain under the terms of which he would be sentenced to an indeterminate term of two years to six years.  Buckery rejected the offer.  In his direct appeal, Buckery argued that he was impermissibly penalized for rejecting the plea bargain as evidenced by the disparity between the plea offer and his sentence of 20 years to life.  In rejecting Buckery's position, the Appellate Division held:[41]  "Finally, we are unable to conclude that [the] persistent felony offender sentence is too harsh or otherwise improvident and thus decline to exercise our discretion in the interest of justice and disturb it."

In his petition to this Court Buckery argues that the New York persistent felony offender procedure violates *Blakely-Apprendi*.[42]  As interpreted by the New York Court of Appeals, "defendants are eligible for persistent felony offender status based *solely* on whether they had two prior felony convictions."[43]  *Apprendi* held that: "*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[44]  New York's persistent felony offender status clearly falls within the *Apprendi* exception of a prior conviction.  *Blakely* does not assist Buckery.  Blakely received an enhanced sentenced based upon the finding by a judge that he had acted with "deliberate cruelty."[45]  Thus, *Blakely* did not disturb the *Apprendi* "prior conviction" exception.

---

[41] 798 N.Y.S.2d at 790–91 (Alterations in the original.  Citation and internal quotation marks omitted.)

[42] *Blakely v. Washington*, 542 U.S. 296 (2005); *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

[43] *People v. Rivera*, 833 N.E.2d 194, 198 (N.Y. 2005) (emphasis in the original).

[44] 530 U.S. at 490 (emphasis added); *see also Almendarez-Torres v. United States*, 523 U.S. 224, 243–247 (1998) (recidivism is a sentencing factor, not an element of the crime that must be submitted to the jury).

[45] 542 U.S. at 300, 303, 313.

Buckery has not raised an Eighth Amendment cruel and unusual punishment claim. In any event, the sentence Buckery received is not grossly disproportionate to the crimes he committed.[46]

Buckery is not entitled to relief under his third ground.[47]

Ground 4:  Ineffective Appellate Counsel.

Buckery contends that appellate counsel was ineffective for failing to raise on direct appeal that the verdict was against the weight of the evidence, or insufficient under *Jackson v. Virginia*,[48] and to state the federal law basis for challenging the People's use of the uncharged crimes and the allegedly improper supplemental instruction. Buckery raised this ground in his motion for a writ of error *coram nobis*, to which the People did not respond and was summarily denied without a reasoned decision.[49]

The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[50] "However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."[51]

The Court addresses first whether there was sufficient evidence to support Buckery's conviction under the constitutional standard. Under *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to

---

[46] *See Solem v. Helm,* 463 U.S. 277, 289-90 (1983); *Rummel v. Estelle*, 445 U.S. 263, 275–76 (1980); *Ewing v. California*, 538 U.S. 11 (2003).

[47] Respondent contends this issue was unexhausted. The Court need not reach that issue as it may deny the petition on the merits notwithstanding the failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2).

[48] 443 U.S. 307 (1979).

[49] There being no reasoned state court decision addressing this issue, this Court must determine it *de novo* on the record before it. *See Spears*, 459 F.2d at 203–04.

[50] *See Jones v. Barnes*, 463 U.S. 745, 751–53 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Apracio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that its not ineffective counsel to fail to raise meritless claims).

[51] *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)).

the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[52]

It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[53] Consequently, although the sufficiency of the evidence review by this under *Jackson* is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[54] This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction of the crime as prescribed by state law. That such evidence exists is clearly established by the record in this case. Buckery bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous; a burden Buckery has failed to carry.

Second, this Court must determine on the record before it whether there is any reasonable probability that Buckery would have prevailed had the sufficiency/weight of the evidence issue been presented to the Appellate Division applying New York law. Under New York law, the Appellate Division employs two related standards of review—legal sufficiency and weight of the evidence. Although related, each requires a discrete analysis. Under the sufficiency of the evidence standard the Appellate Division must determine whether there is a valid line of reasoning and permissible inferences that could lead a rational person to the conclusion reached by the jury on the basis of evidence at trial. Under the weight of the evidence standard, the court must examine the evidence further. If based upon all the credible evidence a different finding would not have been unreasonable, the Appellate Division must weigh the relative probative force of the conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony.[55] In determining the weight of the evidence, the Appellate Division

---

[52] 443 U.S. at 319 (emphasis in the original).

[53] *See Engle v. Isaac, supra*.

[54] *Jackson*, 443 U.S. at 324 n.16.

[55] N.Y. Crim. Proc. Law § 470.15; *People v. Bleakley*, 508 N.E.2d 672, 674–75 (N.Y. 1987).

not only determines credibility issues, it must assess the evidence in light of the elements of the crime as charged to the jury.[56] That is, the Appellate Division "must consider the elements of the crime, for even if the prosecution's witnesses are credible their testimony must prove the elements of the crime beyond a reasonable doubt."[57]

Because the state error *coram nobis* proceeding was denied without opinion and without any response from the People, it is not clear that the Appellate Division relied on independent state procedural grounds in denying the petition; consequently this Court assumes it was denied on the merits.[58] If the claim was denied on the merits, the decision of the state court is entitled to AEDPA deference.[59] Three principles guide this Court in determining whether the Appellate Division's decision in this case was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[60] (1) A federal court must accept that state courts correctly applied state laws.[61] (2) Attribution of error is inconsistent with the presumption that state courts know and follow the law.[62] (3) Attribution of error is also inconsistent with § 2254(d)'s highly differential standard for evaluating state-court decisions, which demands that state-court decisions be given the benefit of the doubt.[63]

---

[56] *People v. Johnson*, 890 N.E.2d 877, 879 (N.Y. 2008).

[57] *People v. Danielson*, 880 N.E.2d 1, 5 (N.Y. 2007).

[58] *See Harris v. Reed*, 489 U.S. 255, 263 (1989); *Farma v. Comm'r of Corr. Servcs.*, 235 F.3d 804, 810 (2d Cir. 2000); *see also Quirama v. Michelle*, 983 F.2d 12, 14 (2d Cir. 1993) (holding that where procedural default was raised before the Appellate Division, affirmance without opinion was based upon an adequate and independent state ground).

[59] *Jimenez*, 458 F.3d at 145–46.

[60] 28 U.S.C. § 2254(d).

[61] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. at 67-68 (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law) *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[62] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[63] *Id*.

In his motion for a writ of error *coram nobis*, Buckery argued quite forcefully and extensively the principles underlying New York's weight of the evidence standard. He also argued the application of the Supreme Court decision in *Strickland*, and the Second Circuit decisions in *Jones* and *Mayo*. Applying the principles of deference to state court decisions discussed above, this Court must assume that the Appellate Division correctly applied New York law and found that the weight of the evidence requirements were satisfied, *i.e.*, that there was no reason to disturb the jury's findings on credibility and credible evidence proved the elements of the crimes of which he was convicted beyond a reasonable doubt. Given that assumption, which is mandated by controlling authority, the logical conclusion is that Buckery would not have prevailed had appellate counsel raised the weight of the evidence argument on direct appeal to the same Court that denied the application for a writ of error *coram nobis*. In the absence of a reasonable probability that Buckery would prevail, appellate counsel was not ineffective for failing to raise the weight of the evidence issue.

Based upon its review of the record before it, this Court cannot say that the decision of the Appellate Division denying Buckery's application for a writ of error *coram nobis* was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[64] Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of the Petitioner's case within the scope of *Lockyer–Williams–Schriro*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.

Buckery is not entitled to relief on his fourth ground.

## V.  CONCLUSION AND ORDER

Buckery is not entitled to relief on any ground raised in his petition.

**IT IS THEREFORE ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

---

[64] 28 U.S.C. § 2254(d).

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[65] To the extent the issues raised in the petition were addressed by the Appellate Division, Third Department, no reasonable jurist could find that the decisions were "objectively unreasonable." Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* Fed. R. App. P. 22(b); Second Circuit R. 22.

The Clerk of the Court to enter final judgment accordingly.

Dated: February 5, 2009.

/s/ James K. Singleton, Jr.<br>JAMES K. SINGLETON, JR.<br>United States District Judge

---

[65] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).